# RT 113 Boat Sales

PURCHASE AND SALE AGREEMENT

Buyer: _____**Bill Keller**_____          Seller: _____**G Force Sportfishing INC.**_____

_____          _____
    **or Assignees**

**For the purchase of** _____**2006 Caison 64**_____
**and named**_____**"G Force" Doc#1178391**_____ (the "YACHT")
The BUYER and the SELLER recognize _____**RT 113 Boat Sales**_____ (the "SELLING BROKER")
and _____**RT 113 Boat Sales**_____ (the "LISTING BROKER")
as the brokers handling the sale of the YACHT, and herein referred to collectively as the "BROKERS."

**1. PRICE & DEPOSIT:** The "selling price" shall be ___**One million seven hundred thousand dollars**___
_____ (US$_____**1,700,000.00**_____) for which the BUYER agrees to buy and the SELLER agrees to sell the YACHT, subject to terms and conditions set forth in this Agreement.
The sum of_____**One million seven hundred thousand dollars**_____Dollars
(US$_____**1,700,000.00**_____ shall be paid as a deposit (the "Deposit") upon execution of this sale.
The deposit shall be paid to and held in escrow by the SELLING BROKER pending resolution of this sale. The balance of the SELLING PRICE shall be paid in certified or collected funds at the closing.

**2. SELLER** has until 5pm, _____**6/1/18**_____, to notify SELLING BROKER, in writing, that the offer has been accepted.

**3. SURVEY:** The BUYER may have the YACHT surveyed at his expense to verify the condition of the YACHT and the accuracy of the attached inventory.

    **A.** The SELLER agrees that BUYER or his agents may examine the YACHT and inventory in a non-destructive manner. The SELLER may stipulate at which boatyard he is willing to have the YACHT hauled for survey. The SELLER agrees that the delivery to and from the boatyard for survey, which he hereby authorizes, is to be at the SELLER's sole risk and expense.

    **B.** The BUYER agrees that the surveyor(s) shall be employed by the BUYER, and that the BROKERS are not responsible for any errors, omissions or other inaccuracies that may appear on the survey of the YACHT, even though the BROKERS may have suggested the name of the surveyor, or at the BUYER's request, may have hired the surveyor on behalf of the BUYER.

**4. SEA TRIAL:** The BUYER may request a sea trial on the YACHT to his satisfaction at the SELLER's sole risk and expense.

**5. ACCEPTANCE OF THE YACHT:** The Buyer shall notify the SELLING BROKER of his acceptance of the YACHT and inventory, his rejection of the YACHT, or his intention to request repairs or a price adjustment for same, no later than five o'clock P.M. local time on _____**6/15/18**_____, if said notice has not been timely received, the BUYER shall be deemed to have accepted the YACHT and inventory in its present condition, subject to the terms, if any, of paragraph #8. *IT IS THE BUYER'S RESPONSIBILITY TO OBTAIN ANY ASSURANCES HE REQUIRES REGARDING THE AVAILABILITY OF SATISFACTORY FINANCING AND INSURANCE PRIOR TO THE ABOVE MENTIONED DATE.*

**ACCEPT YACHT:** _____          **REJECT YACHT:** _____
**Date:** _____          **Date:** _____

> UPON THE BUYERS ACCEPTANCE OF THE YACHT, THE DEPOSIT SHALL BECOME NON-REFUNDABLE.

Initials: Buyer **Bk**     Seller **RSO**

Exhibit A

**6. TERMINATION OF AGREEMENT:** If the BUYER gives notice of his intention to reject the YACHT under the terms of this Agreement, such notice shall constitute termination of the BUYER's obligation to purchase and the SELLER's obligation to sell, and the BUYER and the SELLER both authorize the SELLING BROKER to return the deposit to the BUYER, after deducting any fees and charges incurred against the YACHT by the BUYER, or by the BROKERS on behalf of the BUYER, including the cost of the survey and related expenses.

**7. CLOSING:** The "closing" on this sale shall take place on or before _____June 22nd_____ 20_18_ at ____Five____ o'clock _P_M, local time, at the office of _____RT 113 Boat Sales_____ The closing on the sale shall be deemed completed when:

  A. All documents necessary to transfer good and absolute title to the YACHT have been received by the BUYER or by the SELLING BROKER on behalf of the BUYER; and

  B. The balance of the SELLING PRICE is paid in certified or collected funds to the SELLER, or to the SELLING BROKER for transmittal to the SELLER.

**8. ADDITIONAL PROVISIONS: (If none, write "NONE" in the space provided):**
_____All Tackle, Soft Goods/ Linens, Spare Props, Safety equipment, and Spare parts will be included in the sale._____
_____The G Force's current slip is to convey for the remainder of the 2018 season._____
_____
_____
_____
_____
_____
_____

**OTHER RIGHTS, OBLIGATIONS, AND MISCELLANEOUS PROVISIONS**

**9.** The SELLER warrants and/or agrees as follows:

  A. That he has full power and legal authority to execute and perform the Agreement that he has good and marketable title to the YACHT and that he will obtain permission from any authority to sell the YACHT, if necessary.

  B. That the YACHT will be sold free and clear of any mortgages, liens, encumbrances, or claims whatsoever. If any such obligations remain outstanding at the closing, the SELLER authorizes the SELLING BROKER to deduct the funds necessary to satisfy such obligations from the proceeds of the sale.

  C. To deliver the YACHT and its inventory as accepted in paragraph #5, on or before:
_____June 22nd_____ 20_18_, at _____Sunset Marina_____

  D. To pay any and all duties, taxes, fees, or other charges assessed against the YACHT by any governmental authority prior to the closing, to hold harmless and indemnify the BUYER and BROKERS against any claims or actions for such fees, and to provide validation of such payments at the closing, upon written request by the BUYER, ten days prior to the closing.

Initials: Buyer __BK__ Seller __RSO__

    **E.** To hold harmless and defend the BUYER and BROKERS against any and all claims incurred prior to closing that may impair or adversely affect the BUYER's receipt, use and possession of the YACHT including good and absolute title thereto; and to assume all costs incident to defending BUYERS and BROKERS against such claims including their reasonable attorney's fees.

    **F.** To pay the BROKERS the commission as soon as the sale is consummated, and authorizes the BROKERS to deduct the commission from payments received directly or indirectly from the BUYER. Such commission shall be calculated upon the above stated selling price without regard to subsequent adjustments as a result of survey or otherwise. Should the sale not be consummated for any reason, and the SELLER transfers any interest in the YACHT to the BUYER, directly or indirectly, within two years of the closing date of the Agreement (except a charter of one month or less); then the SELLER agrees to pay the BROKERS an amount equal to the commission which would have applied to the sale for which this Agreement is now created.

**10.** The BUYER warrants and/or agrees as follows:

    **A.** That he has full power and legal authority to execute and perform this Agreement, and to obtain the permission of any authority to buy the YACHT, if required.

    **B.** To deliver the following at closing:

        1. Certified or collected funds payable to the SELLER, or for the SELLER's account, in the amount equal to the balance of the selling price as set forth in paragraph #1.

        2. Certified or collected funds payable to the BROKERS, in an amount equal to any charges incurred against the YACHT by the BROKERS on behalf of the BUYER, including costs related to any survey of the YACHT.

        3. Any and all documents, including authorization, required to complete this purchase.

    **C.** To pay all sales and/or use taxes, now and hereafter, imposed as a result of this sale, to indemnify the SELLER and BROKERS against any obligations to pay such taxes, and to furnish proof of such payments upon request by the BROKERS.

    **D.** The BUYER will have the right of possession of the YACHT only upon completion of the closing.

**11. INTERIM RESPONSIBILITIES:** The SELLER shall bear all risk of loss or damage to the YACHT, or to any person or property on said YACHT until closing. Any damages to the YACHT subsequent to acceptance as set forth in paragraph #5, and prior to completion of closing, shall be repaired by the SELLER at his expense, subject to approval of the BUYER, who has the right to request a reasonable price adjustment or to cancel the sale if substantial damages cannot be repaired to his satisfaction.

**12. DEFAULT BY SELLER:** SELLER's failure to deliver the YACHT to the BUYER or otherwise to perform the terms of this Agreement, due to any reason (including loss of or substantial damage to the YACHT caused by the SELLER's negligence which prevents completion of this sale), shall obligate the SELLER to pay all costs and charges incurred in connection with any survey undertaken on behalf of the BUYER, and to pay the BROKERS the full brokerage commission which would have otherwise been due pursuant to Paragraph #9. SELLER's obligation is without prejudice to any other right the BUYER might also have as a result of the SELLER's default. However, if the sale cannot be completed by the closing date, due to substantial damage to the YACHT not caused by the SELLER's negligence, the SELLING BROKER is authorized to deduct from the deposit, any fees or charges incurred against the YACHT by the BUYER, including the cost of the survey and related expenses, and return the balance to the BUYER.

Initials: Buyer _Bk_ Seller _RSO_

**13. DEFAULT BY THE BUYER:** The BUYER and SELLER agree that the amount of damages sustainable in the event of a default by the BUYER are not capable of ascertainment. Therefore, in the event that the BUYER, after accepting the YACHT under the terms of this Agreement, fails to fulfill any or all the obligations set forth in Paragraph #10, the deposit shall be retained by the SELLER as liquidated and agreed damages and the BUYER and SELLER shall be relieved of all obligations under the Agreement. This sum shall be divided equally (50% / 50%) between the SELLER and the BROKERS after all expenses incurred against the YACHT by the BUYER have been paid. The BROKERS' share shall not exceed the amount the BROKERS would have received had the sale been completed.

**14. ARBITRATION OF DISPUTES:** Any dispute, controversy or claim relating to the Agreement, including but not limited to the interpretation thereof, or its breach or existence, which cannot be resolved amicably by the BUYER and SELLER shall be referred to arbitration, which shall be the sole and exclusive forum for resolution and settlement of any dispute, controversy or claim between the parties. The arbitration shall be conducted in accordance with the Rule of the American Arbitration Association then in force and shall be held in the city and state of the SELLING BROKER's office, unless the BUYER and SELLER mutually agree upon another place. Any award of the arbitral authority shall be final and binding upon the BUYER and SELLER with respect to all disputes, claims or controversies encompassed therein and the BUYER and SELLER shall comply with said award without delay. The arbitral authority shall, in its award, fix, and apportion the costs of arbitration. The award of the arbitral authority may be enforced by any court having jurisdiction over the party against which the award has been rendered or where assets of the party against which the award has been rendered can be located. The BUYER and SELLER further understand and agree that arbitration shall be the sole and exclusive forum for resolving any dispute, controversy or claim relating to this Agreement and that neither party shall resort to any court except to compel arbitration, refer questions of law or to conform, vacate or modify such award.

**15.** Should the LISTING BROKER or the SELLING BROKER become party to any litigation involving the Agreement and found not to be at fault, it is agreed that the BROKER(S) shall be reimbursed for costs and attorney's fees by the party(s) found to be at fault.

**16.** This Agreement shall:

   A. be construed and interpreted in accordance with, and the arbitral authority shall apply the substantive and procedural law of the State of the SELLING BROKER's principal office;

   B. constitute the entire Agreement between the BUYER and SELLER, and supersedes all prior discussions, agreements and understandings of any nature between them, and may not be changed or to except by agreement in writing and signed by the parties to be bound;

   C. be binding upon and shall inure to the benefit of and be enforceable by the successors in interest of the BUYER and SELLER, including but not limited to heirs, executors, administrators or assigns;

   D. survive the closing of the transaction, and shall not be merged in or otherwise be affected by the execution, tender, delivery or acceptance of the Bill of Sale or any other documents executed or delivered at the closing.

**17. FACSIMILE or EMAIL TRANSMISSIONS & COUNTERPARTS:** Facsimile or email transmissions of any signed original document, and retransmission of any signed facsimile transmission shall be the same as delivery of original. This Agreement may be assigned in counterparts

Initials: Buyer [Bk] Seller [RSO]

**18. *VESSEL SOLD "AS IS, WHERE IS," WITH NO WARRANTIES. THE VESSEL IS SOLD "AS IS, WHERE IS" AND "WITH ALL FAULTS." INFORMATION ON THE VESSEL IS BELIEVED TO BE GOOD AND CORRECT AND THE BROKERS OFFER SUCH INFORMATION IN GOOD FAITH, BUT DO NOT AND CANNOT GUARANTEE THE ACCURACY OF THE INFORMATION. BUYER EXPRESSLY AGREES THAT NO WARRANTIES OR REPRESENTATIONS, EXPRESSED OR IMPLIED, HAVE BEEN OR WILL BE MADE, DIRECTLY OR INDIRECTLY, BY THE SELLER OR BROKERS, CONCERNING THE CONDITION OR USE OF THE YACHT. THE BUYER FURTHER EXPRESSLY AGREES THAT HE HAS NOT RELIED UPON ANY ORAL REPRESENTATION BY THE SELLER OR THE BROKERS AS TO THE CONDITION OR CAPABILITY OF THE YACHT OR ITS INVENTORY. THE BUYER ALSO RECOGNIZES AND ACKNOWLEDGES THAT YACHTS AND THEIR INVENTORY MAY HAVE BOTH APPARENT AND/OR HIDDEN DEFECTS AND BUYER ACCEPTS RESPONSIBILITY FOR DETERMINING THE CONDITION OF THE YACHT, ITS INVENTORY AND THE EXISTENCE OF ANY DEFECTS.***

**IN WITNESS WHEREOF, the BUYER and SELLER have hereunto place their signatures as of the date written below:**

| | | |
|---|---|---|
| _____ | *DocuSigned by:* Bill Keller  —C5A2CA9D0D8A40E… | 5/31/2018 8:34:21 AM PDT |
| **WITNESS** | **BUYER** | **DATE** |
| _____ | *DocuSigned by:* Robert Seth Obetz  —CC5D6537C70F452… | 5/31/2018 3:32:26 PM PDT |
| **WITNESS** | **BUYER** | **DATE** |
| _____ | _____ | _____ |
| **WITNESS** | **SELLER** | **DATE** |
| _____ | _____ | _____ |
| **WITNESS** | **SELLER** | **DATE** |

**RT 113 Boat Sales**  
**52 Cemetery Rd**  
**Selbyville DE 19975**

**RT113BoatSales.net**  
**Phone - 302 - 436 - 1737**  
**Fax - 302 - 375 - 5119**