**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| BNP VENTURES, LLC, | * | |
| Plaintiff, | * | |
| v. | * | |
| | | Case No.: DLB-19-192 |
| G-FORCE SPORTFISHING, INC. *et al.*, | * | |
| Defendants. | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

**MEMORANDUM OPINION**

On July 9, 2018, BnP Ventures, LLC ("BnP") purchased a 2006 Caison 64-foot yacht ("vessel") from defendant G-Force Sportfishing, Inc. ("G-Force") for $1.7 million. Three months later, it was alleged in an adversary proceeding in bankruptcy court that G-Force and its shareholders, defendants Melissa and Seth Obetz, had purchased and improved the vessel with funds that were fraudulently transferred to them.[1] In response, BnP filed this action seeking a declaratory judgment that it is a good faith purchaser of the vessel (Count I) and claiming defendants breached the express warranty of title (Count II). Compl., ECF 1.

Pending is plaintiff's motion for summary judgment as to Count I. ECF 24. Defendants oppose BnP's motion and seek summary judgment on both of plaintiff's claims. ECF 29. The parties fully briefed their motions. ECF 24-1, 30, 34 & 36. A hearing is not necessary. *See* Loc. R. 105.6. Because there is no need for a declaratory judgment to settle the parties' legal relationship or terminate any controversy regarding BnP's position as a good faith purchaser,

---

[1] Mrs. Obetz's first name is spelled Melisa by her counsel, but it appears as Melissa in her signature on the warranty and bill of sale she signed, ECF 24-4 & 24-5, and in other filings. The Court will use the spelling in her signature.

BnP's motion is denied and defendants' motion is granted as to Count I.  Additionally, BnP cannot establish on the record before the Court that defendants breached the express warranty they provided when they sold vessel to BnP.  Therefore, defendants' motion is granted as to Count II as well.

### I.    <u>Background</u>

On June 6, 2018, Worley & Obetz, Inc. and related entities ("the debtors") filed Chapter 7 bankruptcy petitions that were consolidated, *In re Worley & Obetz, Inc.,* Case No. 18-13774-REF, in the United States Bankruptcy Court for the Eastern District of Pennsylvania.  Pl.'s Mem. 1; Bankr. Pet., ECF 24-7.  Seth Obetz was a 100% shareholder in one of the debtors, Worley & Obetz, Inc.  Am. Bankr. Compl., ECF 24-11.  He and his wife Melissa Obetz were shareholders in G-Force.  Pl.'s Mem. 1; Bankr. Compl., ECF 24-10; Am. Bankr. Compl.  Neither G-Force nor the Obetzes were debtors in the bankruptcy petition.  Bankr. Pet.

One month after the bankruptcy petition was filed, on July 6, 2018, Melissa Obetz, on behalf of G-Force, signed a Bill of Sale to sell BnP a 2006 Caison 64-foot yacht for $1.7 million.  Bill of Sale, ECF 24-4; Keller Aff. ¶¶ 2–3, ECF 24-1.

The same day, as part of the sale of the vessel, defendants signed a Warranty of Title and Indemnification Agreement ("warranty") in which they "represent[ed] and warrant[ed] that Seller has, and will transfer to BNP VENTURES, LLC . . . good, valid and marketable title to the Vessel and the Vessel is free and clear of all mortgages, liens, taxes, charges, encumbrances, judgements and claims during the ownership of Seller."  Warranty ¶ 2, ECF 24-5.  The warranty stated that "[n]o individual or entity is owed for any outstanding services, dockage, supplies, labors, repairs or materials rendered to, or for the benefit of, the Vessel, during the ownership of Seller, unless ordered by Buyer."  *Id*. ¶ 5.  Additionally, it stated that "Seller is in sole possession of the Vessel

and there are no other parties with a claim of possession to the Vessel . . . including claims for future use or charter of the Vessel." *Id.* ¶ 7.

Also on July 6, 2018, counsel for G-Force provided a letter to BnP's managing member, William Keller. ECF 1-8. The letter stated that the sale had been "duly authorized by all necessary corporate action of G-Force" and that no other consent was necessary except for the satisfaction or release of Branch Banking and Trust Company's lien. *Id.* at 2. It also stated that, to the best of counsel's knowledge, there was "no action, litigation or other proceeding pending or threatened against G-Force or any of G-Force's officers or shareholders before any court, arbitrator or administrative agency, which might result in any material adverse effect on the assets, business, financial condition or operations of G-Force to perform under the Agreement." *Id.* The parties closed on the sale on July 9, 2018. First Am. to Purchase and Sale Agr., ECF 1-4; Keller Aff. ¶ 8.

Three months after the sale, on October 15, 2018, Christine Shubert, who had been appointed as the Chapter 7 trustee of the debtors' estates, filed an adversary proceeding, *Shubert v. Obetz*, Adv. No. 18-235-REF, in the bankruptcy court against G-Force, the Obetzes, and others. Pl.'s Mem. 1; Bankr. Compl.; Am. Bankr. Compl. To the Court's knowledge, the proceeding is ongoing. The original and amended complaints in the adversary proceeding allege, *inter alia*, that G-Force and the Obetzes purchased and improved the vessel using the debtors' funds and that the use of the debtors' funds amounted to preferential and/or fraudulent transfers under 11 U.S.C. §§ 547 and 548. Bankr. Compl. ¶¶ 147–50, 684, 685, 697, 698; Am. Bankr. Compl. ¶¶ 158–62, 700, 701, 713, 714. In particular, it is alleged that Worley & Obetz, Inc. paid a $155,000.00 down payment for the vessel. Bankr. Compl. ¶ 148; Am. Bankr. Compl.¶ 159. Additionally, it is alleged that "Seth Obetz directed W&O to pay for . . . improvements [to the vessel], which at the Petition Date totaled approximately $780,000.00 in unsecured advances from W&O to Seth and Melissa

Obetz's G-Force Sportsfishing, Inc. entity." Bankr. Compl. ¶ 149; Am. Bankr. Compl.¶ 160.  The trustee asks the bankruptcy court to enter judgment against G-Force, to avoid the preferential and/or fraudulent transfers, and to order G-Force to "return to the Trustee, pursuant to 11 U.S.C. § 550, the full value of" the preferential and/or fraudulent transfers.  Bankr. Compl. ¶¶ 147, 150; Am. Bankr. Compl. ¶¶ 151, 154.  "It is the Trustee's intention to avoid and recover all transfers of property of the Debtors that were made to or for the benefit of the G-Force Sportsfishing, Inc., and its affiliates, insiders, subsidiaries, or any other transferee during the Preference Period [and Fraudulent Transfer Period]."  Bankr. Compl. ¶¶ 684, 685, 697, 698; Am. Bankr. Compl. ¶¶ 700, 701, 713, 714.

BnP, concerned about the validity of its title to the vessel in light of the trustee's claims, filed a verified two-count complaint in this Court on January 18, 2019.  In Count I, BnP seeks a declaratory judgment that it is a good faith purchaser of the vessel under Maryland Commercial Law § 2-403.  Compl. 7; *see* Md. Code Ann., Com. Law § 2-403.  In Count II, BnP claims breach of express warranty in the Warranty of Title and Indemnification Agreement.  Compl. 9.  Now pending are the parties' cross-motions for summary judgment.

## II.   <u>Standard of Review</u>

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper*

*Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Anderson*, 477 U.S. at 251. The Court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249). However, if "a party fails to establish the existence of an element essential to that party's case" or "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on cross-motions for summary judgment, this Court must "review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Wheelabrator Baltimore, L.P. v. Mayor & City Council of Baltimore*, No. GLR-19-1264, 2020 WL 1491409, at \*4 (D. Md. Mar. 27, 2020) (quoting *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003)).

### III.   Declaratory Judgment

In Count One, BnP seeks a declaratory judgment that it is a good faith purchaser of the vessel. This Court may issue a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. It provides that, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. The statute requires the satisfaction of three elements before a court may exercise jurisdiction in a declaratory judgment action:

> (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment;" (2) the court possesses an independent basis for jurisdiction over the parties (e.g., federal

question or diversity jurisdiction); and (3) the court does not abuse its discretion in its exercise of jurisdiction.

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (citing 28 U.S.C. § 2201). An actual controversy exists if "[the] plaintiff . . . present[s] a dispute that is 'real and substantial' and 'definite and concrete, touching the legal relations of parties having adverse legal interests.'" *MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, No. RDB-20-0504, 2020 WL 5544184, at *6–7 (D. Md. Sept. 16, 2020) (quoting *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007)).

The decision to issue a declaratory judgment is discretionary. *Volvo Constr. Equip.*, 386 F.3d at 594; *see Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) (noting the Declaratory Judgment Act's language is "nonobligatory"); *Nason Construction, Inc. v. Hebrew Quality Construction, Inc.*, No. SAG-19-3013, 2020 WL 6044295, at *5 (D. Md. Oct. 13, 2020) (citing *Volvo Constr. Equip.* and *Wilton*); *White v. NewRez LLC*, No. RDB-20-1259, 2020 WL 4748539, at *6 (D. Md. Aug. 17, 2020) ("The United States Court of Appeals for the Fourth Circuit has 'held that district courts have great latitude in determining whether to assert jurisdiction over declaratory judgment actions.'" (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422 (4th Cir. 1998))). This Court may enter a declaratory judgment "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Championship Tournaments, LLC v. U.S. Youth Soccer Ass'n, Inc.*, No. SAG-18-2580, 2019 WL 6895876, at *2 (D. Md. Dec. 18, 2019) (citing *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). Alternatively, the Court may "decline to consider a declaratory judgment when it has 'good reason' to do so." *Nason Constr., Inc. v. Hebrew Quality Constr., Inc.*, No. SAG-19-

3013, 2020 WL 6044295, at *5 (D. Md. Oct. 13, 2020) (quoting *Volvo Constr. Equip.*, 386 F.3d at 594).

Plaintiff asks the Court to enter a declaratory judgment that BnP is a good faith purchaser of the vessel under Maryland Commercial Law § 2-403.[2]  Compl. 7.  BnP contends a declaratory judgment is appropriate because "the issue of ownership" of the vessel has been raised in the adversary proceeding.  Pl.'s Mem. 2.  It claims that the adversary complaint "raises the issue that Debtors' funds were improperly used to improve the Vessel."  *Id.* at 4.  Because of the adversary proceeding, BnP argues "there could be issues with the title or that [title] could be voided in a Bankruptcy proceeding."  *Id.* at 12.  To eliminate any uncertainty that it does not have valid title, BnP seeks a declaratory judgment from this Court that it is a good faith purchaser of the vessel.  It argues it is entitled to judgment as a matter of law on this count because the parties agree "[t]here is no genuine issue of material fact that BnP Ventures, LLC is a Good Faith Purchaser."  *Id.* at 1.

Defendants do not dispute that BnP is a good faith purchaser of the vessel.  Defs.' Opp'n & Mem. 1–2.  Rather, they oppose BnP's summary judgment motion and seek summary judgment in their favor, because the adversary proceeding does not call into question BnP's lawful title to

---

[2] Maryland Commercial Law § 2-403 provides:

> A purchaser of goods acquires all title which his transferor had or had power to transfer except that a purchaser of a limited interest acquires rights only to the extent of the interest purchased. A person with voidable title has power to transfer a good title to a good faith purchaser for value. When goods have been delivered under a transaction of purchase the purchaser has such power even though
>
> (a) The transferor was deceived as to the identity of the purchaser, or
>
> (b) The delivery was in exchange for a check which is later dishonored, or
>
> (c) It was agreed that the transaction was to be a "cash sale," or
>
> (d) The delivery was procured through fraud punishable as larcenous under the criminal law.

Md. Code Ann., Com. Law § 2-403(1).

the vessel.  Defs.' Reply 3–4.  As such, defendants argue there is no controversy before the Court that would justify a declaratory judgment.  Defs.' Opp'n & Mem. 1–2.  The Court agrees with defendants.

There is no actual controversy here. It is uncontroverted that BnP is a good faith purchaser of the vessel.  Pl.'s Mem. 1; Defs.' Opp'n & Mem. 1–2.  And a careful review of the pleadings in the adversary proceeding reveals that BnP's title to the vessel is not contested.  The trustee does not allege the vessel was fraudulently conveyed or stolen before the defendants sold it to BnP. Rather, the trustee alleges the defendants unlawfully used funds from a debtor to purchase and improve the vessel.  Bankr. Compl. ¶¶ 147–50, 684, 685, 697, 698; Am. Bankr. Compl. ¶¶ 158–62, 700, 701, 713, 714.  The amount of money allegedly diverted from the debtor to the defendants for the purchase and improvement of the vessel was $935,000.00.  Bankr. Compl. ¶¶ 148–49; Am. Bankr. Compl. ¶¶ 159–60.  It is these funds, not the vessel itself, that are at issue in the adversary proceeding.

The trustee's request for relief is further evidence that title to the vessel is not at issue.  In her request for relief, the trustee seeks to avoid the transfer of the funds and to recover "the full value" of the funds transferred from the debtors to defendants.  Bankr. Compl. ¶¶ 147, 150, 684, 685, 697, 698; Am. Bankr. Compl. ¶¶ 151, 154, 700, 701, 713, 714.  The trustee asks the bankruptcy court to enter judgment against G-Force "in an amount equal to" to the alleged transfers and to order G-Force "to immediately pay" the trustee.  Bankr. Compl. ¶¶ 147, 150; Am. Bankr. Compl. ¶¶ 151, 154.  Significantly, the trustee does not seek to recover the vessel itself or to avoid the transfer of the vessel from defendants to BnP.  To the Court's knowledge, the trustee has not placed a lien against the vessel or otherwise acted in a manner that would indicate the vessel itself, as opposed to funds use to purchase and improve the vessel, is subject to any legal action.

Given these facts, the Court finds that plaintiffs have not established an actual controversy. In the absence of an actual controversy, the Court may not issue a declaratory judgment. Even if there were an actual controversy, the Court declines to issue a declaratory judgment. One would not "serve a useful purpose" here because there is no "legal relation[] in issue" for the Court to clarify. *See Championship Tournaments, Inc.*, 2019 WL 6895876, at *2. Nor would a declaratory judgment end any controversy between BnP and the defendants or "afford relief from [any] uncertainty" about BnP's title to the vessel.[3] *See id. Cf. McNulty v. Casero*, No. SAG-16-2426, 2020 WL 4732142, at *4 (D. Md. Aug. 14, 2020) ("A declaratory judgement action is appropriate here to clarify who owns the disputed tract of land on the parties' property boundary. Disagreement over this legal question is at the heart of all the subsequent disputes between the parties. A resolution will inform the parties of their rights and obligations, and will avert future controversies.").

For these reasons, the Court will deny BnP's motion for summary judgment and grant defendants' motion for summary judgment as to Count I.

## IV.     Breach of Express Warranty

Defendants also seek summary judgment on BnP's breach of warranty claim. BnP insists material issues of disputed fact preclude judgment as a matter of law on this claim.

To prove defendants breached an express warranty, BnP must "establish that 1) a warranty

---

[3] Even plaintiff recognizes the alleged dispute is not "definite and concrete" such that a declaratory judgment would be appropriate. For instance, BnP refers to the "threat" that the trustee may undo the sale of the vessel, even though more than two years after the filing of the adversary proceeding, there is no indication she has or will. Pl.'s Reply 2. BnP argues there "*could* be issues with the title or that it *could* be voided in a Bankruptcy proceeding." Pl.'s Mem. 12 (emphasis added). In its complaint, BnP alleges that "*[i]f* the sale of the Vessel were deemed null and void, BnP *would* be harmed." Compl. ¶ 61 (emphasis added). Such language confirms the purported controversy over title is neither definite nor concrete.

existed; 2) the product did not conform to the warranty, and 3) the breach proximately caused the injury or damage." *Palmer v. CVS Health*, No. CCB-17-938, 2019 WL 6529163, at *6 (D. Md. Dec. 4, 2019) (quoting *SpinCycle, Inc. v. Kalender*, 186 F. Supp. 2d 585, 589 (D. Md. 2002)).

It is undisputed that a warranty existed. As part of the sale of the vessel, defendants signed a Warranty of Title and Indemnification Agreement that contained a number of warranties. ECF 24-5. Defendants do not contest that this fact.[4]

As to the second element, whether the product conformed to the warranty, the parties disagree. Defendants insist the vessel conformed to the contract's express warranty, because they held title to it free and clear when they sold it to BnP. Defs.' Mem. 3–4. They assert that the trustee's allegations in bankruptcy court are only allegations. They argue plaintiff cannot prove any blemish on its title because "[t]here is no evidence, no court decision . . . supporting or establishing BnP's speculation that Mr. or Mrs. Obetz or G-Force stole or converted the Vessel, any part of it, or any part of the money they used to purchase and support the Vessel." *Id.* at 5.

BnP contends that, when defendants sold the vessel, they "were in fact engaged in a bankruptcy proceeding." Pl.'s Reply & Opp'n 1. Plaintiff insists that in bankruptcy court, "the Trustee has broad discretions, including the ability to undo . . . the sale of the vessel," even though "[a]t this time, the Trustee has not taken steps to seize the vessel." *Id.* at 1 n.1. As a result, in plaintiff's view, "there is an issue with title as the vessel is currently identified in a Bankruptcy pleading." *Id.* at 5.

An express warranty is a part of a contract for sale when, as here, the seller makes an "affirmation of fact or promise . . . to the buyer which relates to the goods and becomes part of the

---

[4] Plaintiff does not allege or argue that the July 6, 2018 letter from G-Force's counsel was a warranty or that defendants breached the promises in that letter. *See* Compl. ¶¶ 64–77.

basis of the bargain."  Md. Code Ann., Com. Law § 2-313(1)(a) (stating that such an affirmation or promise "creates an express warranty that the goods shall conform to the affirmation or promise"); *see also Rite Aid Corp. v. Levy-Gray*, 894 A.2d 563, 571 (Md. 2006) (noting "an implied warranty 'is a "curious hybrid" between tort and contract law' and differs from express warranties based on contract" (quoting *Hous. Auth. of Portland v. Ash Nat'l*, 584 P.2d 776, 778 (Or. Ct. App. 1978)); *see also Goyal v. Thermage, Inc.*, No. AMD-08-20, 2008 WL 11363675, at *2 (D. Md. June 5, 2008) (quoting *Rite Aid*); *Collins v. Li*, 933 A.2d 528, 578 (Md. Ct. Spec. App. 2007) (quoting *Rite Aid*), *aff'd sub nom. Pittway Corp. v. Collins*, 973 A.2d 771 (Md. 2009).  Under the rules of contract interpretation, the Court interprets a contract's "plain language in accord with its 'ordinary and accepted meaning[.]'"  *Credible Behavioral Health, Inc. v. Johnson*, 220 A.3d 303, 310–11 (Md. 2019) (quoting *Ocean Petroleum, Co. v. Yanek*, 5 A.3d 683, 691 (Md. 2010)).  The Fourth Circuit has applied these tenets to ascertain the meaning of warranties under Maryland law.  *See Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 223 (4th Cir. 2009).  In *Robinson*, the plaintiff claimed "the need to replace his tires after 18 months and 18,000 miles" was a breach of Honda's express warranty.  *Id.*  The Fourth Circuit considered the language of the warranty and concluded that the district court correctly dismissed the plaintiff's claim against Honda for breach of express warranty because "[b]y its own terms, the warranty clearly, unambiguously, and repeatedly excludes tires from the warranty coverage."  *Id.*  Similarly, the Court also affirmed the dismissal of the plaintiff's breach of warranty claim against Michelin, reasoning:

> Robinson's efforts to manufacture a promise concerning tread wear out of a warranty provision plainly intended to limit warranty coverage are unavailing. Because there was no tread wear guarantee in the Michelin warranty, Robinson's allegations of premature tire wear fail to state a claim for breach of express warranty.

*Id.* at 224–25.

Here, BnP alleges a breach of paragraphs five and seven of the warranty.  Compl. ¶ 70. Paragraph five of the warranty states:  "No individual or entity is owed for any outstanding services, dockage, supplies, labors, repairs or materials rendered to, or for the benefit of, the Vessel, during the ownership of Seller, unless ordered by Buyer."  Warranty ¶ 5.  There is no evidence before the Court that the terms of this provision were breached.  Plaintiff does not identify any evidence that an individual or entity was owed for any services, dockage, supplies, labors, repairs or materials rendered to or for the benefit of the Vessel during G-Force's ownership.  The existence of the bankruptcy proceeding at the time the warranty was executed does not amount to a breach of the warranty in paragraph five.

The warranty's paragraph seven states:  "Seller is in sole possession of the Vessel and there are no other parties with a claim of possession to the Vessel or the aforesaid personal property, including claims for future use or charter of the Vessel."  Warranty ¶ 7.  There is no evidence that this provision was violated.  It is undisputed that G-Force was in sole possession of the vessel when it was sold to BnP.  There is no evidence that another party had a "claim of possession to the Vessel."  At the time the warranty was executed, the trustee had not yet filed the adversary proceeding.  In the adversary proceeding filed three months after the sale, the trustee did not assert a "claim of possession to the Vessel."  There is no evidence before the Court that defendants breached the warranty in paragraph seven.

It is true that three months after the warranty was signed, the vessel was identified in the bankruptcy trustee's adversary complaint as property that was obtained and improved with funds diverted from a debtor.  But the trustee did not file a claim against the vessel or challenge the validity of G-Force's title to the vessel.  Nor does the trustee allege that G-Force's sale of the vessel to BnP was unlawful.  And the trustee does not claim entitlement to the vessel or seek to

12

void the sale of the vessel.  The essence of BnP's argument is that defendant Seth Obetz was a shareholder in Worley & Obetz, Inc., one of the debtors who filed bankruptcy one month before the sale, and that he knew there was a possibility that the bankruptcy petition could lead to an adversary proceeding against G-Force (which it did) in which the trustee sought to void the sale and seize the vessel (which she did not).  Even if BnP is correct that Mr. Obetz knew or should have known that the trustee would file an adversary proceeding that would mention the vessel, BnP cannot point to any language in the warranty that was breached.[5]  The failure to disclose the existence of a bankruptcy proceeding that did not include G-Force or the Obetzes was not a breach of any provision in the warranty.  Moreover, in the two-and-a-half years since the sale of the vessel, there is no evidence before the Court that the trustee or anyone else has challenged the vessel's title or asserted a claim against the vessel.

Because the Court finds there was no breach, damages need not be addressed.

The undisputed facts establish that BnP cannot demonstrate breach of express warranty. Accordingly, defendants are entitled to judgment as a matter of law on Count II.  *See Palmer*, 2019 WL 6529163, at *6; *SpinCycle*, 186 F. Supp. 2d at 589.

---

[5] In its complaint, BnP alleges breaches of the representations in paragraphs five and seven.  Even if the Court considers the language in the other provisions in the warranty, there is no evidence that they were breached.  The vessel was not subject to "mortgages, liens, taxes, charges, encumbrances, judgements and claims during the ownership of Seller."  Warranty ¶ 4.  The representation that "[t]he Vessel is not the subject of any pending litigation" was accurate. Warranty ¶ 8.  The only litigation it arguably was subject to is the adversary proceeding, which was filed three months later.  There is no evidence before the Court that the pre-sale bankruptcy petition referred to the vessel or that the vessel was subject to pending litigation in the bankruptcy court or elsewhere.  The representation that "there are no unsatisfied judgements against it nor are there any personal injury claims now outstanding, or possible of assertion, against the Vessel, during the ownership of Seller" was also accurate.  *Id.*

## V.      <u>Conclusion</u>

BnP's motion for partial summary judgment, ECF 24, IS DENIED, and defendants' motion for summary judgment, ECF 29, IS GRANTED.

A separate order will issue.


Date: <u>November 6, 2020</u>                    <u>            /S/            </u>
                                                 Deborah L. Boardman
                                                 United States Magistrate Judge